JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
ANNE CARMICHAEL
523 E. BRINTON STREET APT. 2
PHILADELPHIA, PA 19144

**(b)** County of Residence of First Listed Plaintiff  PHILA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)* GRAHAM BAIRD
ERIC A. SHORE, P.C.
1500 JFK BLVD. STE. 1240
PHILA, PA 19102

## DEFENDANTS
HERTZ CORPORATION
450 MCCLELLAN HIGHWAY
EAST BOSTON, MA 02186

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*  CHRISTINA STONEBURNER
FOX ROTHSCHILD, LLP
75 EISENHOWER PARKWAY, STE 200
ROSELAND, NJ 07068

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|                          | PTF | DEF |                                               | PTF | DEF |
|--------------------------|-----|-----|-----------------------------------------------|-----|-----|
| Citizen of This State    | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|----------|-------|--|--------------------|------------|----------------|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 § U.S.C. § 2000e-3

Brief description of cause:
TITLE VII - RETALIATION

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
150,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions:)*

JUDGE _____   DOCKET NUMBER _____

DATE  9/21/16

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 523 E. BRINTON STREET, APT. Q, PHILADELPHIA, PA 19144

Address of Defendant: 460 McCLELLAN HIGHWAY, EAST BOSTON, MA 02186

Place of Accident, Incident or Transaction: PHILADELPHIA AIRPORT
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☐   No☐

Does this case involve multidistrict litigation possibilities?     Yes☐   No☑

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                                                                    Yes☐   No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
                                                                                    Yes☐   No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
                                                                                    Yes☐   No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
                                                                                    Yes☐   No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, GRAHAM BAIRD, counsel of record do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 9/21/16     _____     92692
                   Attorney-at-Law                Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 9/21/16     _____     92692
                   Attorney-at-Law                Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

ANNE CARMICHAEL      :      CIVIL ACTION

v.      :

HERTZ CORPORATION      :      NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)   In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.      ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.      ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      (✓)

| | | |
|---|---|---|
| 9/21/16 | | PLAINTIFF, ANNE CARMICHAEL |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215. 627. 9999 | 215. 923 .5951 | Grahamb @ erichere.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Anne Carmichael | : | |
| 523 E. Brinton Street, Apt. 2 | : | |
| Philadelphia, PA 19144 | : | JURY DEMANDED |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. |
| Hertz Corporation | : | |
| 450 McClellan Highway | : | |
| East Boston, MA 02186 | : | |
| | : | |
| And | : | |
| | : | |
| John Doe Defendants Nos. 1-10 | : | |
| | : | |
| Defendants | : | |

## CIVIL ACTION COMPLAINT

### I. Parties and Reasons for Jurisdiction.

1.    Plaintiff, Anne Carmichael (hereinafter "Carmichael") is an adult individual residing at the above address.

2.    Defendant, Hertz Corporation (hereinafter "Hertz") is a business corporation organized by and operating under the laws of the Commonwealth of Massachusetts and having a headquarters at the above captioned address.

3.    Defendants, John Does Nos. 1-10 are individuals employees, agents or servants of Defendants who may have liability to Plaintiff for violations of law set forth herein as follows, but are unknown to Plaintiff and therefore not specifically identified.

4.    At all times material hereto, Defendants, qualified as Plaintiff's employer pursuant to the United States Fair Labor Standards Act, and Title VII of the Civil Rights Act and as defined under Pennsylvania law.

5.    This action is instituted pursuant to the United States Civil Rights Act and the Pennsylvania Human Relations Act.

6.    Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343.

7.    Supplemental jurisdiction over the Plaintiff's state law claim is conferred pursuant to 28 U.S.C. § 1367.

8.    Ms. Carmichael has satisfied the administrative prerequisites to bringing a civil rights claim.  [Exh. A.]

9.    Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants conduct business in this district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district. Plaintiff was working in the Eastern District of Pennsylvania at the time of the illegal actions by Defendants as set forth herein.

## II.  Operative Facts.

10.    Plaintiff, an African-American woman, was employed by the Defendant from on or about June 20, 2013 until on or about April 12, 2016, the date of her unlawful termination.

11.    During the course of her employment with Defendant, Plaintiff held the position of Gold Choice Representative at the Philadelphia Airport car return location at 1 Arrivals Road, Philadelphia, PA 19153.

12.    During her nearly three (3) years of employment, Plaintiff maintained a satisfactory job performance with Defendant.

13.    In her capacity as a Gold Choice Representative, Plaintiff made several complaints to the Defendant's ethics hotline as well as her managers/supervisors about racist treatment of African-American customers.

14.     On February 16, 2016, Defendant's manager, Brian Bishop treated a Five Star Gold customer, named Shavon Johnson, poorly at the time she was renting a vehicle from Defendant.

15.     Five Star Gold Customers are entitled to certain benefits through Defendant, including vehicle upgrades.

16.     On the aforementioned date, Ms. Johnson was attempting to rent a vehicle and Bishop was refusing to provide a vehicle upgrade, prevent Ms. Johnson from renting the vehicle in a timely manner and unfairly scrutinizing her rental agreement and treating her rudely.

17.     This incident was not the first time when Ms. Carmichael observed Bishop and other white employees and managers mistreating African-American five star gold members.

18.     Ms. Carmichael routinely observed Bishop and other white employees and managers refer to African American five star gold members as "the locals," and also refusing to provide their entitled upgrades to African American renters.

19.     Ms. Carmichael also routinely observed Defendant's employees and managers refuse to provide vehicle upgrades, and routinely provide African-American customers lower quality vehicles.

20.     On February 16, 2016, immediately subsequent to her interactions with Bishop, Ms. Johnson, discussed her frustrations with Ms. Carmichael and requested the customer complaint number.

21.     Ms. Carmichael provided Ms. Johnson the customer complaint number.

22.     On February 19, 2016, Ms. Carmichael telephoned Defendant's Human Resources Ethics Hotline.

23.     She made a complaint about the aforementioned unreasonable, racially discriminatory treatment of customers.

24.     On March 1, 2016, Ms Carmichael was advised that Defendant had investigated and determined that her complaints were unsubstantiated and without merit.

25.     During that meeting on March 1, 2016, Defendant informed Ms. Carmichael that she was suspended.

26.     She was also taken off the work schedule as of March 1, 2016.

27.     Ultimately, Ms. Carmichael's employment was terminated on April 18, 2016.

28.     Ms. Carmichael was terminated in retaliation for complaints made about a pattern of racially discriminatory practices at Defendant's Philadelphia airport location.

29.     Defendant's purported reasons for terminating Plaintiff were pre-textual.

30.     As a direct and proximate result of Defendants' conduct in terminating Plaintiff, she sustained great economic loss, future lost earning capacity, lost opportunity, loss of future wages, as well emotional distress, humiliation, pain and suffering and other damages as set forth below.

## III.  Causes of Action.

**COUNT I**
**TITLE VII CLAIM--RETALIATION**
**(42 U.S.C.A. § 2000e-3(a))**

31.     Plaintiff incorporates paragraphs 1-30 as if fully set forth at length herein.

32.     At set forth above, Plaintiff, made complaints to Defendant concerning a pattern of racial discrimination against African American customers.

33.     In retaliation for making these complaints, Defendant took adverse action against Plaintiff by terminating her employment.

34.     Plaintiff's participation in protected activity under Title VII was a motivating factor in Defendant's decision to terminate her employment.

35.     As such, Defendant's decision to terminate Plaintiff's employment is a retaliatory action contemplated by Civil Rights Act of 1964, § 704(a).

36.     As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

37.     As a result of the conduct of Defendant's owners/management, Plaintiff hereby demands punitive damages.

38.     Pursuant to the Civil Rights Act of 1964, § 704(a), 42 U.S.C. §2000e-3(a), et seq Plaintiff demands attorneys fees and court costs.

## COUNT II
### PENNSYLVANIA HUMAN RELATIONS ACT
### 43 Pa.C.S.A. §951, et seq.

39.     Plaintiff incorporates paragraphs 1-38 as if fully set forth at length herein.

40.     As set forth above, Plaintiff is a member of a protected class.

41.     Defendants terminated Plaintiff's employment.

42.     As set forth above, a motivating factor in the decision to terminate Plaintiff's employment was Plaintiff's complaints regarding a pattern of racially discriminatory conduct on the part of the employer.

43.     As such, Defendants have violated the Pennsylvania Human Relations Act, 43 Pa.C.S.A. §951, et seq.

44.     As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

45.     As a result of the conduct of Defendant's owners/management, Plaintiff hereby demand punitive damages.

46.     Plaintiff demands attorneys' fees and court costs.

## COUNT III
## BREACH OF CONTRACT

47.     Plaintiff incorporates the paragraphs above as if fully set forth at length herein.

48.     Plaintiff worked for Defendant subject to an employment contract.  Exh. B.

49.     Pursuant to the contract, Defendant may terminate Plaintiff's employment for cause.

50.     Defendant is barred from discriminating against the Plaintiff.  See Exh. B, article III.

51.     As set forth above, Defendant's termination of Plaintiff's employment was retaliatory and lacked cause.

52.     As such Defendant breached its employment contract with Plaintiff.

53.     As a direct and proximate cause of the breach of the employment contract, Plaintiff has suffered economic loss.

**IV.  Relief Requested.**

**WHEREFORE,** Plaintiff, Anne Carmichael demands judgment in her favor and against Defendant, Hertz Corporation jointly and severally, in an amount in excess of $150,000.00 together with:

 A. Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages. Lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering

 B. Punitive damages;

 C. Attorneys fees and costs of suit;

 D. Interest, delay damages; and,

 E. Any other further relief this Court deems just proper and equitable.

**LAW OFFICES OF ERIC A. SHORE, P.C.**

BY: _____

**GRAHAM F. BAIRD, ESQUIRE**
Two Penn Center
1500 JFK Boulevard,  Suite 1240
Philadelphia, PA 19110

Attorney for Plaintiff, Anne Carmichael

Date: _September 21, 2016_

# EXH. A

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Anne Carmichael | From: | Philadelphia District Office |
|---|---|---|---|
| | 523 E. Brinton St, Apt 2 | | 801 Market Street |
| | Philadelphia, PA 19144 | | Suite 1300 |
| | | | Philadelphia, PA 19107 |

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2016-01737 | Legal Unit, Legal Technician | (215) 440-2828 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

Spencer H. Lewis, Jr.,
District Director

6/24/16
(Date Mailed)

cc:     HERTZ CORPORPATION

Christina Stoneburner, Esq. (for Respondent)

Graham Baird, Esq. (for Charging Party)

# EXH. B

THE HERTZ CORPORATION

and

OFFICE & PROFESSIONAL EMPLOYEES INTERNATIONAL UNION, LOCAL NO. 32

COUNTER SALES REPRESENTATIVES

PHILADELPHIA, PENNSYLVANIA

DECEMBER 17, 2011 - DECEMBER 16, 2015

|              | SECTION                                      | PAGE |
|--------------|----------------------------------------------|------|
| ARTICLE I.   | RECOGNITION                                  | 1    |
| ARTICLE II.  | NON-DISCRIMINATION, NON-HARASSMENT           | 2    |
| ARTICLE III. | MANAGEMENT RIGHTS                            | 2    |
| ARTICLE IV.  | REPORTING PAY                                | 3    |
| ARTICLE V.   | SENIORITY, TRANSFER, LAYOFF AND RECALL       | 3    |
| ARTICLE VI.  | PART-TIME EMPLOYEES                          | 5    |
| ARTICLE VII. | LEAVE OF ABSENCE                            | 6    |
| ARTICLE VIII.| JOB STEWARD CLAUSE                          | 7    |
| ARTICLE IX.  | DISCHARGE OR SUSPENSION                      | 8    |
| ARTICLE X.   | GRIEVANCE PROCEDURE                          | 9    |
| ARTICLE XI.  | WORKING HOURS                               | 10   |
| ARTICLE XII. | HOLIDAYS                                     | 11   |
| ARTICLE XIII.| VACATION PAY ALLOWANCE                       | 12   |
| ARTICLE XIV. | WAGES                                        | 14   |
| ARTICLE XV.  | VOTING                                       | 14   |
| ARTICLE XVI. | BULLETIN BOARDS                              | 14   |
| ARTICLE XVII.| BEREAVEMENT LEAVE                           | 15   |
| ARTICLE XVIII.| SUCCESSORS AND ASSIGNS                      | 15   |
| ARTICLE XIX. | STRIKES, STOPPAGES AND LOCKOUTS              | 15   |
| ARTICLE XX.  | UNIFORMS                                     | 16   |
| ARTICLE XXI. | OVERTIME DISTRIBUTION                        | 16   |
| ARTICLE XXII.| INSURANCE                                    | 17   |
| ARTICLE XXIII.| SHIFT PREMIUM PAY                           | 17   |
| ARTICLE XXIV.| POSTING AND BIDDING                          | 18   |
| ARTICLE XXV. | TEAMSTERS LOCA L830 RETIREMENT SAVINGS PLAN  | 18   |
| ARTICLE XXVI.| PENSION PLAN                                 | 19   |
| ARTICLE XXVII.| SICK LEAVE                                  | 19   |
| ARTICLE XXVIII| FULL AGREEMENT CLAUSE                       | 20   |
| ARTICLE XXIX.| DURATION, TERMINATION, AND MODIFICATION      | 21   |
| APPENDIX A   |                                              | 22   |
| LETTER OF AGREEMENT |                                       | 24   |

LABOR AGREEMENT

By and between THE HERTZ CORPORATION, a Delaware Corporation, as specifically applying to its Hertz Brand Rent-A-Car Stations [excluding Hertz Local Edition (HLE) stations] located in Philadelphia, Pennsylvania, hereinafter referred to as the "Employer," and OFFICE & PROFESSIONAL EMPLOYEES INTERNATIONAL UNION, LOCAL NO. 32, AFL-CIO, Philadelphia, Pennsylvania, hereinafter referred to as the "Union."

WITNESSETH: In consideration of the mutual undertaking and agreement hereinafter set forth and other good and valuable considerations, it is hereby mutually agreed as follows:

## ARTICLE I
## RECOGNITION

SECTION 1.  For the purpose of collective bargaining in respect to rates of pay, wages, hours of employment or other conditions of employment, subject to and in accordance with the provisions of the Labor-Management Relations Act of 1947, the Employer recognizes the Union as the exclusive representative of all Counter Sales Representatives, Instant Return Representatives, and Office Employees employed by THE HERTZ CORPORATION at its Hertz Brand Rent-A-Car (excluding HLE) Philadelphia, Pennsylvania Stations, except those listed in Section 2 below.

SECTION 2.  It is mutually agreed that the term "employee" for the purpose of this Agreement shall include all Counter Sales Representatives, Instant Return Representatives,  and General Office Clerks but shall not include supervisory employees and all employees with authority to hire, promote, discharge, discipline or otherwise effect changes in the status of employees or effectively recommend such action.

SECTION 3.  The purpose of this Agreement is to provide orderly collective bargaining relations between the Employer and the Union, to secure prompt and equitable disposition of grievances and to establish fair wages, hours and working conditions for employees covered by this Agreement.

SECTION 4.  (a) It shall be a condition of employment that all employees of the Employer, covered by this Agreement, who are members of the Union in good standing and those who are not members on the date of the signing of this Agreement, shall on the thirty-first (31st) day following the date of the signing of this Agreement, become and remain members in good standing in the Union.  It shall be a condition of employment that all employees covered by this Agreement and hired on or after the date of the signing of this Agreement shall on the thirty-first (31st) day following the beginning of such employment become and remain members in good standing of the Union.

(b)  For the purpose of this Agreement "in good standing" means employees who have

1

paid their current month's dues.

SECTION 5.  The Employer agrees that it will deduct all initiation fees, and monthly membership dues from the wages of employees who have made application for membership into the Union and who are covered by this Agreement, provided that the Employer receives from each employee, on whose account such deductions are made, an assignment authorizing the Employer to make such deductions, which authorization shall be irrevocable for the term of this Agreement or for one (1) year, whichever is less, and which shall be automatically renewable for a like period.  The Employer shall promptly remit the sum of such deductions to the Secretary-Treasurer or other duly authorized representative of the Union.

## ARTICLE II
## NON-DISCRIMINATION, NON-HARASSMENT

SECTION 1.  The Company and the Union will not interfere with, restrain or coerce the employees covered by this Agreement.  The Company and the Union agree that there will be no discrimination or harassment against any employee because of age, race, sex, sexual orientation, color, creed, national origin, marital or veteran status, non-disqualifying physical or mental disability, union membership or union activity.

The Company will not discriminate in respect to hire, tenure of employment or any term or condition of employment against any employee covered by this Agreement because of membership in/or activity on behalf of the Union, nor will it discourage or attempt to discourage membership in the Union, or encourage or attempt to encourage membership in another Union.

The use of the masculine gender in this Agreement shall include both male and female.

## ARTICLE III
## MANAGEMENT RIGHTS

SECTION 1.  It is recognized that the right to hire, transfer, promote, discharge or discipline employees for cause, to maintain discipline and efficiency of the employees is the sole responsibility of the Employer, except that the Union members shall not be discriminated against as such.  In addition, the location of stations, the schedules, methods, processes and means of operations are solely and exclusively the responsibility of the Employer.

SECTION 2.  Nothing contained in this Article should be construed to limit or change any rights guaranteed the employees under other Articles or Sections of this contract.

2

ARTICLE IV
REPORTING PAY

SECTION 1. It is mutually agreed that any emergency beyond the control of the Company (for example, Act of God, terroristic act, riot or civil disorder) which causes the Employer to temporarily suspend its operations will be handled as follows: The Employer shall not be liable for the payment of any wages for time lost to any employee who is notified not to report for work or who is sent home from work as a result of such shutdown. In the event that it is necessary under such circumstances for any employee or employees to remain at work, the principle of seniority shall govern.

ARTICLE V
SENIORITY, TRANSFER, LAYOFF AND RECALL

SECTION 1. Employees shall be regarded as probationary employees until their names have been placed on the seniority list. There shall be no responsibility for the reemployment of probationary employees if they are laid off or discharged during this period. Probationary employees shall have no recourse to the Grievance Procedure contained in Article IX of this Agreement.

SECTION 2. Employees may acquire seniority and be considered a regular seniority employee by working ninety (90) days. When seniority is established, it shall be retroactive to the employee's date of hire. However, after working thirty (30) days probationary, employees shall be covered under the provisions of Articles XXII and XXIII. The Company, upon request, shall furnish the Union with a current seniority list up to four (4) times during a contract year.

SECTION 3. In the event of a reduction in force, employees will be laid off or transferred on the basis of seniority, and increasing the working force, employees with seniority will be recalled to their original jobs in the reverse order in which they were either laid off or transferred.

SECTION 4. Management will observe shift preference according to seniority, and so far as practicable will observe seniority in the assignment of vacation periods, and choice of locations, provided the employee qualifies. Exercise of shift preference, the choice of locations, and the assignment of vacation periods by seniority shall not be permitted to interfere with the efficiency of operations.

SECTION 5. In the advancement of employees to higher paid jobs when ability, merit and capacity are relatively equal, employees with the longest seniority will be given preference.

SECTION 6. Employees hired as of 12/18/86 shall remain on non-interchangeable seniority lists. All employees hired prior to 12/17/86 shall receive the same consideration for transfers as in the past.

3

SECTION 7.  LOSS OF SENIORITY: Seniority shall be broken for any <u>one</u> (1) of the following reasons:

    (a)   If the employee quits;

    (b)   If the employee is discharged;

    (c)   If the employee is absent for three (3) consecutive working days without properly notifying the department head, unless a satisfactory reason is given; (It is understood that employees must call in daily on short term illnesses (seven (7) days or less), and at least once a week on long term illnesses (eight (8) days or more), unless a doctor's note specifies a length of time beyond one week).

    (d)   If the employee fails to return to work within three (3) working days after being notified to report for work, and does not give a satisfactory reason;

    (e)   If the employee is laid off for a continuous period equal to the seniority he had acquired at the time of such layoff; or twelve (12) months, whichever is less.

    (f)   <u>RETIREMENT AS FOLLOWS:</u>

        (1)   An employee who retires, or who is automatically retired under the terms of the Pension Plan shall cease to be an employee and shall have his seniority canceled.

        (2)   An employee who has been retired on a total and permanent disability pension and who thereby has broken his seniority in accordance with sub-section (1) above, but who recovers and is subsequently re-employed shall have his seniority reinstated as though he had been continued on a sick leave of absence during the period of his disability retirement.

        (3)   If an employee retired for reasons other than total and permanent disability, who has lost seniority, in accordance with sub-section (1) above, is rehired, such employee will have the status of a new employee and without seniority, and he shall not acquire or accumulate any seniority thereafter, except for the purposes of applying the provisions governing Holiday pay and Vacation pay.

  (g)  Except as otherwise provided for in 'f-2' above, any absence in excess of twelve (12) continuous months.

4

SECTION 8.  In case of shortage of work to be performed, where it becomes necessary to reduce payroll costs, it is agreed that the Employer will give the employees affected five (5) working days notice before reduction is made except in case of an Act of God, railroad or airline strike.

SECTION 9.  Prior to a change of shift, it is agreed that the Employer will give at least three (3) days' notice to the employee and where practical, the Employer will try to furnish such notice five (5) days in advance.

SECTION 10.  To protect his seniority, it is the employee's responsibility to keep the Management informed of his proper home address.  At the time of layoff, each employee will be given an opportunity to write his correct address over his signature on Corporation form furnished for that purpose, of which he shall receive a copy.

SECTION 11.  Management will not decrease the working staff or employees covered by this Agreement by using supervisory employees; but in any case, no supervisory employee or non-unit personnel will be used by the Employer to perform work covered by this Agreement except in the case of an emergency, training or assisting probationary employees.

## ARTICLE VI
## PART TIME EMPLOYEES

SECTION 1.  Notwithstanding the other provisions of this Article the Employer shall be permitted to employ part-time employees.  In the event there is a lay off of full time employees, a full time employee may select a part-time position and continue to receive coverage under the Hertz Custom Benefit Program.

SECTION 2.  In the event of a reduction in force, part-time employees will be deemed to have less seniority than full-time employees.

SECTION 3.  Notwithstanding other provisions of this Agreement, Articles VII (except Section 5), XXI, XXII, XXIII; XXIV and XXV shall not apply to part-time employees. However, part-time employees shall receive holiday pay in accordance with the term of the agreement only if they work the holiday.  In addition, the part-time employees shall accumulate vacation in accordance with said Articles on a pro rated basis.  Part-time employees shall be eligible for pro-rated sick days based upon the number of hours they worked during the preceding year.

SECTION 4. The Company will post all full-time Counter Sales Representative vacancies and, at management's discretion, will consider qualified part-time employees for those full-time positions for those full-time Counter Sales Representative vacancies. Those part-time employees not selected by management for promotion will be notified of the result in writing.

5

ARTICLE VII
LEAVES OF ABSENCE

SECTION 1.  A leave of absence may be granted for personal reasons for a period not to exceed thirty (30) days upon application of the employee to and approval by the Employer. Such leaves of absence shall not be renewed and seniority will accumulate during the leave.

SECTION 2.  ILLNESS, INJURY OR PREGNANCY LEAVE OF ABSENCE:  In the event of off-the-job illness, injury or pregnancy which prevents the performance of regular duties, an employee with seniority status, will be automatically granted a leave of absence after medical evidence satisfactory to the Employer is presented for a period not to exceed six (6) months.  If the illness or injury continues beyond six (6) months, such leave will be extended for an additional period up to six (6) months provided medical evidence satisfactory to the Employer is presented.   The employee shall keep his immediate supervisor informed monthly in writing by the employee's physician of the approximate time when he will be able to resume his regular duties.  The employee's return to work shall be subject to the approval of the attending physician and/or the Employer's designated physician.  Seniority shall accumulate during the leave.

CHILD REARING LEAVE:  In case of maternity leave, all employees, upon certification of the attending physician that the employee is no longer disabled as a result of the pregnancy, may request a "child rearing" leave, providing the following conditions are met:

    a.    The employee must notify the supervisor within four (4) weeks of the date of birth of the child, that she desires a "child rearing leave."

    b.    The employee must submit proof of the child's birth.

    c.    The child rearing leave may last only to the point where the child attains the age of six (6) months.

    d.    The returning employee will displace the least senior employee on the payroll in his/her classification, providing such least senior employee has less seniority than the employee in question.   The employee will give the Company two (2) weeks' advance notice of anticipated return.

    e.    The employee will be required to pay the cost of All Benefit Plans for the period of the "child rearing leave."

SECTION 3.  Probationary employee's seniority shall not receive credit for time off sick for the ninety (90) working days of employment required to acquire seniority, and in no case shall a probationary employee's name be placed on the seniority list while away from work on a sick leave.

6

SECTION 4. All of the above leaves of absence, including sick leaves, are granted subject to the following conditions:

  (a)   The return of any employee to work before the expiration of his leave of absence is at the option of the Employer.

  (b)   Any employee who fails to report for work within three (3) working days after the date of expiration of the leave shall be considered as having voluntarily quit unless he has a satisfactory reason or has made prior arrangements with the Employer in writing.

  (c)   If upon the expiration of a leave of absence there is no work available for the employee in line with his seniority or if the employee would otherwise have been subject to layoff according to seniority during the period of the leave, the period which breaks seniority shall start from the date of expiration of the leave.

SECTION 5. LEAVES OF ABSENCE FOR MILITARY SERVICE: Leaves of Absence for Military Service shall comply with the provisions of the Uniformed Services Employment and Reemployment Rights Act (USERRA) as amended. Any employee who enters into active service in the Armed Forces of the United States will be given a leave of absence for and will accumulate seniority during such period of service, and upon termination of such service shall be offered re-employment in his previous position or a position of like seniority, status and pay, unless the circumstances have so changed as to make it impossible or unreasonable to do so, in which event he will be offered such employment as may be available which he is capable of doing at the current rate of such work, provided he has not been dishonorably discharged, is physically and mentally able to do the work and reports for work within ninety (90) days of the date of such discharge.

SECTION 6. The parties will comply with the Family and Medical Leave Act (FMLA) of 1993 as amended and the Americans with Disabilities Act of 1990 as amended.


ARTICLE VIII
JOB STEWARD CLAUSE

SECTION 1. The Employer recognizes the right of the Union to designate job stewards and alternates.

The authority of job stewards and alternates so designated by the Union shall be limited to, and shall not exceed, the following duties and activities:

  (1)   The investigation and presentation of grievances in accordance with the provisions of the Collective Bargaining Agreement;

7

(2)    The collection of dues when authorized by appropriate Local Union action;

(3)    The transmission of such messages and information which shall originate with, and are authorized by the Local Union or its officers, provided such messages and information:

    (a)    have been reduced to writing, or

    (b)    if not reduced to writing, are of a routine nature and do not involve work stoppages, slowdowns, refusal to handle goods, or any other interference with the Employer's business.

The employer recognizes the valuable contribution of trained Union Stewards and agrees to allow the Stewards one (1) day off with pay per contract year to attend Steward training when notified by the Union Business Manager or his representative. There is a limit of three (3) Stewards.

Job Stewards and alternates have no authority to take strike action or any other action interrupting the Employer's business, except as authorized by official action of the Union.

The Employer recognizes these limitations upon the authority of job stewards and their alternates, and shall not hold the Union liable for any unauthorized acts. The Employer in so recognizing such limitations shall have the authority to impose proper discipline, including discharge, in the event the shop steward has taken unauthorized strike action, slowdown, or work stoppage in violation of this Agreement.

Stewards and grieving employees shall be permitted to process grievances during working hours in accordance with Articles X, GRIEVANCE PROCEDURE, and Article XI, WORKING HOURS, without loss of regular time or pay, but shall not be permitted to leave assigned work and/or location without the Employer's permission. Such time spent in processing grievances shall be considered working hours in computing daily and/or weekly pay, but shall not include overtime pay.

## ARTICLE IX
## DISCHARGE OR SUSPENSION

SECTION 1.  The Employer shall not discharge nor suspend any employee without just cause. In all cases involving the discharge or suspension of any employee, the Company must immediately notify the employee in writing of his discharge or suspension and the reason therefore. Such written notice shall also be given to the Shop Steward, and a copy mailed to the Local Union office, within one (1) working day from the time of the discharge or suspension.

SECTION 2.  In respect to discharge, the Employer must give adequate warning against such employee in writing with copies of the same to the Union and job steward. The

warning notice and/or notices as herein provided shall not remain in effect for a period of more than one (1) year from the date of the occurrence from which the complaint and warning notice are based.  No warning notice need be given in the case of discrepancy, theft, and violation of reasonable Company rules which have been received by the Union and published.

SECTION 3.  A discharged or suspended employee must advise his Local Union in writing within two (2) working days after receiving notification of such action against him, of his desire to appeal the discharge or suspension.   Notice of appeal for discharge or suspension must be made to the Employer in writing by the Union within ten (10) days of the date of discharge or suspension.  Failure to adhere to the time limit will bar the Union from processing the grievance to arbitration.

SECTION 4.  Notices not filed within the above time limits shall be deemed waived unless extension is agreed to mutually by the parties.

If the Union or Employer are unable to agree as to the settlement of the case it may be referred to Article X, Step 4, Grievance Procedure within two (2) days after the above notice of appeal is given to the Employer. The notice of appeal to arbitration must be made within the time period above or the Union will be barred from processing their grievance to arbitration.


ARTICLE X
GRIEVANCE PROCEDURE

SECTION 1. Should any grievance arise with respect to the interpretations of this contract only, excluding general wage rates, every effort shall be made to settle the grievance in the following order of steps:

STEP 1.  All grievances must be presented in writing within seven (7) calendar days of the occurrence.   If not presented within this time limit, the grievance shall be denied on timeliness.

STEP 2.  A meeting will be held between the grievant, the Shop Steward, and a representative of the employer within fourteen (14) calendar days of the grievance being filed.  The Employer is required to respond within seven (7) calendar days of this meeting.  If the employer fails to do so, the grievance will go to the next step.

STEP 3.  If not resolved, a meeting within fourteen (14) calendar days will be held between the Business Representative of the Union or his designee and the Employer's Representative or his designee in charge locally.  The Employer is required to answer within seven (7) calendar days of this meeting.  If the Employer fails to do so, the grievance will go to the next step.

9